UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ANTHONY MCKINNON, SR.,

              Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

Civil No. 12-4717(NLH)

OPINION

**APPEARANCES:**

ROBERT ANTHONY PETRUZZELLI
JACOBS, SCHWALBE & PETRUZZELLI, PC
WOODCREST PAVILION
TEN MELROSE AVENUE
SUITE 340
CHERRY HILL, NJ 08003
    *Attorney for Plaintiff*

REBECCA H. ESTELLE
SPECIAL ASSISTANT UNITED STATES ATTORNEY
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
26 FEDERAL PLAZA, ROOM 3904
NEW YORK, NY 10278
    *Attorney for Defendant*

**HILLMAN**, District Judge

      This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income ("Social Security benefits") under Title II and Title XVI of the Social Security Act.  42 U.S.C. § 401, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ")

erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, October 15, 2007.  For the reasons stated below, this Court will affirm that decision.

I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits, claiming that as of October 15, 2007 his bilateral knee and low back pain, Hepatitis B, and positive HIV status have left him completely disabled and unable to work.  Prior to this time, Plaintiff worked as a cook helper.

After a hearing before an ALJ, it was determined that Plaintiff was not disabled.  Plaintiff appealed the decision, and the Appeals Council denied review rendering the ALJ's decision final.  Plaintiff now seeks this Court's review.

II.  DISCUSSION

A.   Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams

2

v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical

3

evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

4

**B.  Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B)(emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.  If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.  If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

5

    3.    If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 <u>and</u> has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

    4.    If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

    5.    Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. <u>See</u> <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  <u>See</u> <u>id.</u>  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."  <u>Kangas v. Bowen</u>, 823 F.2d 775, 777 (3d Cir. 1987); <u>see</u> <u>Olsen v. Schweiker</u>, 703 F.2d 751, 753 (3d Cir. 1983).

**C.   Analysis**

In this case, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability (Step One).  The ALJ next found that Plaintiff's bilateral knee and low back pain, Hepatitis B, and positive HIV status were severe (Step Two).  The ALJ then found that Plaintiff's impairments did not meet the medical equivalence criteria (Step Three).  At Step Four, the ALJ found that even though Plaintiff was not capable of performing his previous job as a cook helper, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform sedentary jobs, which exist in significant numbers in the national economy (Step Five).

Plaintiff presents three main arguments for review: (1) the ALJ erred in determining Plaintiff's residual functional capacity (2) the ALJ erred in his credibility assessment of Plaintiff's testimony, including Plaintiff's testimony about his daily life activities, abilities and restrictions, and pain; and (3) the ALJ did not comply with SSR 00-4p, which concerns conflict between the vocational expert's information regarding available jobs and the Dictionary of Occupational Titles.

The Court finds that the ALJ issued a thorough and well-reasoned decision, and that she did not err in her findings as to the assessment of the medical evidence and Plaintiff's RFC, Plaintiff's testimony as to pain and life activities, or to the

7

available jobs in the national economy.

With regard to the ALJ's assessment of the medical evidence, and her related finding as to Plaintiff's RFC, the ALJ first found that Plaintiff's Hepatitis B and HIV positive status were conditions that were being managed well by medication.  The ALJ then discussed Plaintiff's limitations due to his back and knee impairments.  The ALJ noted that Plaintiff suffered from chronic knee and back pain due to injury and degenerative changes.  The ALJ summarized the notes, reports and testimony of seven doctors, including Plaintiff's treating physicians, an independent medical expert, and two state agency consultants.  The ALJ noted that physical therapy and home exercises reduced his pain and improved his condition.  The ALJ also noted that the most restrictive assessment of Plaintiff's abilities revealed that he was limited to lifting a maximum of 10 pounds, frequent lifting or carrying of 10 pounds, the ability to walk, stand or sit for two hours and sit for six hours in an eight hour work day, the occasional use of his feet for pushing and pulling pedals, climbing stairs, kneeling, crouching, stooping and bending, the avoidance of unprotected heights, limited exposure to odors, and avoidance of extreme temperatures.[1]  The doctors' notes and reports did not

---

[1]It appears that the ALJ partially recounted the testimony of an independent medical expert (called "Dr. Mojer Henandensen" on the transcript, but named "Dr. Jorge Hernandez Denton" in the decision) inaccurately.  In her decision, the ALJ stated that this doctor categorized Plaintiff to be capable of lifting 20

reveal any other significant restrictions, including no restrictions recommended by any treating doctor.[2]

---

pounds, which would put him in the "light" work category. The transcript reveals, however, that this doctor found that Plaintiff was only capable of lifting 10 pounds, which placed Plaintiff in the "sedentary" work category. The Court does not find this misstatement to be reversible error, because the ALJ ultimately concludes that Plaintiff is capable of sedentary work. Moreover, regardless of what work category a doctor classifies a claimant, it is for the ALJ, and not any treating or consulting physician, to determine a claimant's RFC. See 20 C.F.R. § 404.1520(e) ("We use our residual functional capacity assessment at the fourth step of the sequential evaluation process to determine if you can do your past relevant work (paragraph (f) of this section) and at the fifth step of the sequential evaluation process (if the evaluation proceeds to this step) to determine if you can adjust to other work (paragraph (g) of this section)."). Despite Plaintiff's argument to the contrary, this Court finds that the ALJ properly assessed, "function-by-function," Plaintiff's RFC, which is evidenced in the ALJ's detailed statement of Plaintiff's abilities and restrictions.

Relatedly, Plaintiff argues that the ALJ improperly discounted Dr. Hernandez Denton's recognition of the side effects of the pain medication and the impact of Plaintiff's pain on his limitations. Plaintiff argues that this doctor took Plaintiff's pain issues into consideration, but by affording the doctor's testimony "great weight," the ALJ actually contradicts her own finding that Plaintiff's testimony was not reasonably credible. In other words, the ALJ gave "great weight" to the doctor's recognition of Plaintiff's pain, but the ALJ still went on to reject the impact of Plaintiff's pain. The Court does not find this argument availing. Dr. Hernandez Denton testified that he took Plaintiff's statements about his pain into consideration when considering how much Plaintiff could lift and carry. (R. at 39.) The doctor limited Plaintiff's lifting and carrying to 10 pounds. That is the same finding as the ALJ's ultimate determination as to Plaintiff's RFC. Thus, the ALJ did not contradict herself.

[2]Plaintiff argues that his treating doctor of three years, Dr. de la Torre, should have been considered as a treating source and given controlling weight. Plaintiff also argues that treatment notes from other treating doctors were not assigned a "weight." Plaintiff, however, does not explain what part of Dr.

As for Plaintiff's testimony, the ALJ recognized that Plaintiff complained of debilitating pain. The ALJ noted that Plaintiff only took his pain medications every other day because of their side effects. The ALJ also noted that Plaintiff stated he had not continued physical therapy after his one month of treatment in late 2009, which had given him some relief. The ALJ further noted that Plaintiff testified that he prepares his own food, does food and clothing shopping, cleans his house and does his own laundry, goes out daily, takes the bus to visit his grandchildren, and has to walk up and down 13 stairs from his basement apartment to get out of the house or take showers.

Based on these considerations, the ALJ found that Plaintiff was able to perform sedentary work, which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.

---

de la Torre's treatment records, or the other treating doctors' notes, contradict the ALJ's finding as to Plaintiff's RFC. Simply because this doctor and others noted Plaintiff's complaints of pain does not automatically require the ALJ to accept the credibility of Plaintiff's complaints. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p (providing that a treating physician will be afforded controlling weight as to the nature and severity of a claimant's impairment, but only if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence of record); 20 C.F.R. § 404.1529(c) (providing that allegations of pain and other subjective symptoms must be supported by objective medical evidence, and an ALJ may reject a claimant's subjective testimony if he does not find it credible as long as he explains why he is rejecting the testimony).

Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567.

Because that finding revealed that Plaintiff could not perform his prior job as a cook helper, which required the lifting of up to 50 pounds and frequent bending, standing and walking, and because Plaintiff's ability to perform all or substantially all of the requirements of the sedentary work level were impeded by Plaintiff's additional limitations, the ALJ consulted with a Vocation Expert (VE) to determine if Plaintiff could perform work in the national economy.  Based on someone of Plaintiff's age, education, work experience, and physical condition, with the physical capacity to lift and carry no more than 10 pounds, sitting most of the time and alternating sitting and standing every two hours, among Plaintiff's other restrictions, the VE stated that this person could perform the duties of an addresser, document preparer, and order clerk, as defined by the Dictionary of Occupational Titles.  The VE used the Standard Occupational Classification to demonstrate that significant numbers of these jobs existed in the local and national economy.  As a result, the ALJ determined that Plaintiff was not disabled.


In addition to Plaintiff's arguments on how the ALJ erred, noted above, <u>supra</u> notes 1 and 2, with regard to the medical evidence, Plaintiff's RFC, and Plaintiff's subjective complaints of pain, Plaintiff contests the ALJ's finding that Plaintiff is capable of performing the jobs of addresser, document preparer, and order clerk.  Plaintiff's main argument is that these jobs require Plaintiff to sit for eight hours in an eight-hour work day because they cannot be performed standing.  The hypothetical posed to the VE by the ALJ based on Plaintiff's RFC required a job that alternated standing and sitting, with Plaintiff sitting for no more than six hours.  Thus, Plaintiff argues that Plaintiff's RFC does not conform to those jobs.

The Court does not find Plaintiff's argument availing.  The VE testified that the addresser, document preparer, and order clerk jobs require a person to sit for six out of eight hours, where the person sits for two hour blocks and has standing breaks in between. ®. at 46, 57-58.)  These jobs therefore match up to Plaintiff's RFC.[3]

---

[3]<u>See</u> SSR 96-9p, which provides, in relevant part:
Sitting: In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals. If an individual is unable to sit for a total of 6 hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded. The extent of the limitation should be considered in determining whether the individual has the ability to make an adjustment to

Plaintiff also argues that because the VE used the Standard Occupational Classification (SOC) Code to provide the statistical data on the number of available jobs in the national and local economy, rather than DOT data, the VE's representation of the number of addresser, document preparer, and order preparer jobs was overstated.  For example, the VE represented that there are 1,020 document preparer jobs in the local area, and 266,090 nationally.  Plaintiff argues this number is not accurate because these numbers represent "Office Clerks, General," which category includes 73 jobs, with only three of them being sedentary positions.  Plaintiff argues that without knowing how many of those three sedentary jobs exist, the ALJ cannot support her burden of determining that there is some other kind of substantial gainful employment Plaintiff is able to perform.

The Court does not find any error with the ALJ accepting the VE's testimony regarding the number of addresser, document preparer, and order preparer jobs that are available in the national and local level.  Social Security Regulations explain that:

> When we determine that unskilled, sedentary, light, and medium jobs exist in the national economy (in significant numbers either in the region where you live or in several regions of the country), we will take administrative notice of reliable job information available from various governmental and other publications.  For example, we will take notice of--

---

other work. . . .

>   (1) Dictionary of Occupational Titles, published by the Department of Labor;
>   (2) County Business Patterns, published by the Bureau of the Census;
>   (3) Census Reports, also published by the Bureau of the Census;
>   (4) Occupational Analyses, prepared for the Social Security Administration by various State employment agencies; and
>   (5) Occupational Outlook Handbook, published by the Bureau of Labor Statistics.

20 C.F.R. § 404.1566(d).

Even though the SOC is not specifically listed, the SOC qualifies as "reliable job information available from various governmental and other publications." See United States Department of Labor, Bureau of Labor Statistics, Standard Occupational Classification, available at http://www.bls.gov/SOC/ ("The 2010 Standard Occupational Classification (SOC) system is used by Federal statistical agencies to classify workers into occupational categories for the purpose of collecting, calculating, or disseminating data. All workers are classified into one of 840 detailed occupations according to their occupational definition."). Moreover, other courts faced with the same challenged have also rejected the same argument. See, e.g., James v. Astrue, 2011 WL 7143113, *25 (E.D. Pa. 2011) (noting that plaintiff's counsel had the opportunity to ask the VE about his use of the SOC, and finding that the plaintiff did not point "to any law or regulations that compel us to call into question the methodology or sources used by the vocational

14

expert.  The vocational expert did not testify that the method he used in this case to determine numbers of jobs available is any different than the method used and accepted in any other social security case.  That DOT classifications are more specific than the SOC system is not indicative that this method of correlation is unreliable.  Based on our independent research, the SOC system is used by federal statistical agencies to classify occupations"); Brault v. Social Sec. Admin., Com'r, 683 F.3d 443, 450-51 (2d Cir. 2012) (rejecting argument about unspecific SOT data because when plaintiff's "counsel cross-examined the VE, he was given a full opportunity to explore the limitations of the SOC-to-DOT mapping methodology, including challenging some of the expert's specific numbers").[4]

    Consequently, the Court does not find that the ALJ committed any error in reviewing the medical evidence, in considering Plaintiff's testimony and complaints of pain, in determining

---

[4]see also Crider v. Highmark Life Ins. Co., 458 F. Supp. 2d 487, 511 (W.D. Mich. 2006) (citing http:// www. doleta. gov/ programs/ onet/; Gilcrest v. Unum Life Ins. Co. of Am., No. 05-CV-923, 2006 WL 1836057, at *3 n.4 (S.D. Ohio June 30, 2006); Troy v. Unum Life Ins. Co. of Am., No. 03-Civ.-9975(CSH), 2006 WL 846355, at * 9 (S.D.N.Y. Mar. 31, 2006) ("The Standard Occupational Classification (SOC) system provides the occupational title and code utilized in the Department of Labor's electronic Occupational Information Network (O*NET) system. 'The O*NET system, using common language and terminology to describe occupational requirements, supercedes the seventy-year old Dictionary of Occupational Titles with current information that can be accessed online or through a variety of public and private sector career and labor market information systems.'").

Plaintiff's RFC, and in finding that Plaintiff is capable of performing sedentary work that is available in the national and local economy.

### III. Conclusion

For the reasons expressed above, the ALJ's determination that Plaintiff was not totally disabled is supported by substantial evidence.  Accordingly, the decision of the ALJ is affirmed.  An accompanying Order will be issued.


Date: September 26, 2013          s/ Noel L. Hillman
                                  NOEL L. HILLMAN, U.S.D.J.